```
            IN THE UNITED STATES BANKRUPTCY COURT

            FOR THE SOUTHERN DISTRICT OF TEXAS

                      GALVESTON DIVISION

IN RE                          )
                               )
NOBLE C. GINTHER,              )   CASE NO. 07-80200-G3-11
                               )
        Debtor                 )
```

MEMORANDUM OPINION

The Court has held a trial on the Debtor's Objections to the claims of Valorie Davenport and The Davenport Legal Group, collectively referred to as "Davenport."  Davenport filed three claims, Proof of Claim No. 19, Proof of Claim No. 20 and Proof of Claim No. 21.[1]  On December 14 and 19, 2007, Debtor objected to Davenport's claims (Docket Nos. 185, 190, 191, and 192, collectively the "Objection to Claim").  The court has considered the Response (Docket No. 275) filed by Valorie Davenport and The Davenport Legal Group, the docket sheet, pleadings and entire file in the above captioned matter, the evidence, testimony and argument of counsel.  This Memorandum Opinion includes the Findings of Fact and Conclusions of Law of the court.  A separate conforming Judgment will be entered.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are

---

[1]Although the proofs of claim identify Davenport Legal Group as the claimant, Davenport has consistently appeared in support of the claim individually.  Proof of Claim Nos. 20 and 21 are duplicate claims and amend Proof of Claim No. 19.

considered Findings of Fact, they are adopted as such.

The litigation before the court with respect to the instant claim objection appears to involve a continuation of a trail of activity described in the Memorandum Opinion rendered by Judge Jeff Bohm on February 7, 2006 in Davenport's own bankruptcy case, Case No. 03-38089-H4-7.[2]  In Adversary No. 04-3618, Ron S. Rainey, an attorney formerly associated with Davenport, sought allowance of his claim, and a determination that his claim was nondischargeable.  After a trial, Judge Bohm found that Rainey had a claim in the amount of $171,807.35 plus interest from the date of Davenport's bankruptcy case filing until paid.  The court further found that Rainey's claim was nondischargeable under 11 U.S.C. §§ 523 (a)(4) as Davenport had embezzled the funds, and in the alternative, that Rainey's claim was nondischargeable under section 523(a)(6) as Davenport's actions constituted a willful and malicious injury to Rainey.  Following Judge Bohm's 2006 opinion, on February 12, 2008, Rainey filed a Motion for Turnover of Property and Aid in Enforcing Judgment which was resolved by an Agreed Turnover Order, entered August 15, 2008, in which, <u>inter alia</u>, Rainey and Davenport divided the possible proceeds of

---

[2]The court notes that, in his opinion of May 10, 2006 in Adversary No. 04-3618, Judge Bohm cited Davenport's history of dilatory activity in her own bankruptcy case, and noted a pattern of Davenport's making excuses for her frequent failure to comply with court orders.  Judge Bohm concluded such neglect was inexcusable, with respect to the matters before him.

any success that Davenport might have in her claim for fees against Davenport's former client, Noble Ginther, the Debtor in the instant case.  (Docket No. 180, Adversary No. 04-3618).

Findings of Fact

Noble C. Ginther, Jr. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 23, 2007.  Debtor's amended Chapter 11 plan (Docket No. 160, as modified by Docket No. 171) was confirmed, by order entered November 28, 2007 (Docket No. 175).

The Debtor's plan is a liquidating plan which provides generally for Debtor to liquidate or refinance certain real property, with the proceeds to be deposited into a "Creditors' Fund."  If Debtor fails to provide sufficient monies to pay the claims due under the plan, on or before 11:59 o'clock p.m. on October 1, 2008, the plan provides for appointment of a Liquidating Disbursing Agent, vested with all of the Debtor's non-exempt assets, effective October 2, 2008.  (Docket No. 160).  Thus, time is of the essence in resolving the instant matter.

The present state of the Debtor's finances following confirmation of his plan, consensual among his creditors other than Davenport, is not of record.  He may or may not be able to realize some benefit from the terms of the plan that require funding of the Creditor's Fund by October 1, 2008.  Debtor will be effectively denied the opportunity of that benefit unless

there is a ruling by this court on Davenport's claim, by that date.  Accordingly, the court and staff did as much work as possible in advance of trial to review cases of record which might bear on the instant proceeding, including Southern District of Texas Adversary No. 04-3618, Adversary No. 04-3944, Adversary No. 06-3556, Adversary No. 07-3018, Civil Action No. G-96-493, Civil Action No. H-85-6191, Civil Action No. H-05-3285, and to review Davenport's previous testimony in the instant Chapter 11 case.

Davenport filed her proof of claim, in the amount of $197,850.80, for legal services rendered to Debtor prepetition, in matters outside the instant Chapter 11 case.

In the instant claim objection, Debtor asserts that Davenport does not have a claim against the bankruptcy estate. Debtor contends that if there was a contract between Debtor and Davenport for legal services, it was on a contingency basis and that there was no written contract as required by Texas Disciplinary Rule 1.04(d), and no recovery, so no fees are owed. Debtor also contends that the claim should be disallowed on the basis of Davenport's negligent representation of him in various legal proceedings.  Debtor further asserts that if any fee agreement existed with Debtor, it was fraudulently induced by Davenport's failure to disclose: her own pending bankruptcy proceeding; that she was found to have embezzled funds from a

creditor; that she had no access to electronic means of filing; her failures to comply with deadlines or retain office staff; and her chronic illness which prevented her from maintaining her law practice.

On May 31, 2007, Davenport was served with the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines" (which included a Proof of Claim form and instructions) in the above captioned bankruptcy proceeding.  This Notice set June 28, 2007 as the date for the meeting of creditors and September 26, 2007 as the deadline to file a proof of claim in the instant case.  (Docket Nos. 34, 39).  On June 6, 2007, the creditors' meeting was reset, and was held and concluded on July 12, 2007.  Davenport was present.

The day after the deadline for filing a proof of claim, on September 27, 2007, Davenport filed an unsecured nonpriority claim, Proof of Claim ("POC") No. 19, on behalf of Davenport Legal Group ("DLG") in the amount of $268,431.00 for services performed.[3]  Thereafter, POC No. 20, dated November 2, 2007, was filed on November 2, 2007, on behalf of DLG in the amount of $197,850.80.[4]  On November 11, 2007, Davenport filed POC No. 21,

---

[3] POC No. 19, dated September 26, 2007, was actually filed on September 27, 2007, and included a thirty-four page detail of time spent and legal services rendered from April 14, 2004 through January 29, 2007.  The attachment did not include a calculation of the total amount due.

[4] POC No. 20 included a thirty-two page attachment reflecting a total in the amount of $239,307.50.

dated November 2, 2007, on behalf of DLG in the amount of $197,850.80.[5]

On November 5, 2007 and November 13, 2007, Davenport filed a "Motion for Leave to File Untimely and Amended Proof of Claim" (Docket No. 144) and a "First Amended Motion for Leave to File Untimely and Amended Proof of Claim" (Docket No. 152), respectively, requesting that POC No. 19 be considered timely filed or granting leave to file POC Nos. 20 and 21.  The court denied both motions without prejudice for procedural deficiencies.[6]  (Docket Nos. 145, 153).  Thereafter, Davenport filed her Second Amended Motion on November 27, 2007, which was opposed by Debtor.

Debtor's Disclosure Statement was approved and the confirmation hearing was scheduled for November 14, 2007, by an Order signed and entered on October 11, 2007.  (Docket No. 129).  Davenport was served with the Order.  Davenport submitted a ballot rejecting the Debtor's Amended Plan. Davenport did not file an objection to the Disclosure Statement or the Amended Plan

---

[5]   POC No. 21, designated "Amended," is comprised of thirty-four pages and appears to be the same as POC No. 20.  The three claims filed by Davenport are based upon legal services rendered to Debtor over the same period of time.  POC Nos. 20 and 21 are duplicate claims and amend POC No. 19 by reducing the amount of the claim.

[6]   Movant failed to submit a proposed form of order with the original motion pursuant to Bankruptcy Local Rule 9013(h).  The First Amended Motion did not include "notice and hearing" language required by Bankruptcy Rule 9013.

6

nor did she appear at the the disclosure statement or confirmation hearings.  Davenport's Second Amended Motion to file late proof of claim was pending at the time of the confirmation hearing.  The court took judicial notice that Davenport's POC was filed after the deadline for filing proofs of claim and disallowed her claim for voting purposes.  See Docket Sheet, Minutes of hearing held on November 28, 2007.  See also 11 U.S.C. §§ 1126(a), 502(a), 501, and 1111(a); BR 3003(c)(2); BR 3003(c)(3); and BR 3018(a).  Debtors' Amended Plan was confirmed by the court on November 28, 2007 and Davenport was served with a copy of the confirmation order.  Docket Nos. 175 and 178.

On March 12, 2008, the court held an evidentiary hearing on Davenport's Second Motion To File Late Proof of Claim.  The proof of claim for these services was filed untimely, and included as an attachment an invoice reconstructed by Davenport and her office staff within a few days preceding the filing deadline for proofs of claim, purporting to reflect three years' worth of time records.

Davenport testified that the invoice was not created contemporaneously with the services.  Davenport testified that it had been reconstructed from contemporaneous documents.  The documents were not produced to opposing counsel during discovery, even following the granting of a motion to compel against Davenport on August 29, 2008, nor were they produced at trial.

(Docket Nos. 296, 297).

At the March 12, 2008 hearing, Davenport testified at length as to her health problems which had begun in 2002 and 2003, and had contributed to her late filing of the claim. The court granted Davenport's motion and deemed POC No. 19, as amended by POC No. 20 and 21, timely filed. (Docket Nos. 270, 271).

The court held a status conference on Debtor's Objection to Claim on June 24, 2008. Davenport did not file her Response to the Objection to Claim until the morning of the status conference. (Docket No. 275). At the June 24, 2008 status conference, the court advised the parties that trial would be set in September 2008 and a Scheduling Order was issued on June 26, 2008, which set a pretrial conference for September 16, 2008, with trial to begin the following week. In that Scheduling Order the court set deadlines for each party to file a pretrial statement. Davenport's pretrial statement was due no later than July 8, 2008 and Debtor's was to be filed no later than July 11, 2008. (Docket No. 278).

Prior to the date set for the pretrial conference,[7] on July 11, 2008, Debtor filed a Motion to Strike Davenport's

---

[7] Ultimately, no pretrial conference was held on September 16, 2008 because the courthouse for the Southern District of Texas in Houston was closed to the public during the week of September 15 - 19, 2008 as a result of Hurricane Ike.

response to the Objection to Claim for her failure to timely file her pretrial statement and a Motion to Compel and for Sanctions for Davenport's failure to answer discovery requests. (Docket Nos. 282, 290). On July 31, 2008, twenty-three (23) days after the due date for her pretrial statement, Davenport moved to extend the time to file her pretrial statement. (Docket No. 286).

After entry of the Agreed Turnover Order (dated August 15, 2008) with Rainey in Davenport's bankruptcy proceeding, in which it was agreed that Davenport personally would receive some benefit from a recovery from her claim in the instant case, Davenport appears to have became focused on this claim, and she began to pursue it with some vigor, though with significant disregard of the Federal Rules of Civil Procedure, the Bankruptcy Rules, and the Bankruptcy Local Rules. Davenport did not file her pretrial statement until the morning of August 25, 2008, the date the court set for the hearing on Debtor's motions to strike and compel and Davenport's own request for extension to file her Pretrial Statement.

Davenport's activities, including, the late filing of her response to the Objection to Claim, her failure to fully comply with discovery requests, her failure to timely file her pretrial statement, and her request for an extension of time to file her pretrial statement late, occasioned delays and

9

difficulties in getting this matter to trial.

Davenport appeared pro se but, as noted by Judge Bohm, this is not a situation where a pro se litigant can be considered ignorant of the law. See Adversary Proceeding No. 04-3618, Docket No. 122, p. 1, n. 1. Not only is Davenport an experienced trial attorney, but she also has closely observed at least one bankruptcy proceeding (her own personal bankruptcy case, filed in 2003).

Davenport has also claimed problems with service on her by the Clerk. These complaints occurred also in her own bankruptcy case before Judge Bohm, who noted in his May 10, 2006 opinion that it is well settled that attorneys have a duty to monitor the dockets to keep themselves informed as to entry of orders they wish to appeal (Docket No. 122, Adv. No. 04-3618).

The trial of the instant claim objection addressed the questions of the existence and nature of a fee contract between the parties (if any), the validity and plausibility of Davenport's reconstructed records, and the value of the services performed by Davenport. Ginther's counsel approached this task efficiently. Davenport did not.

While the time available to the litigants to present their cases was limited (two hours for case in chief for each litigant), the trial has, of course been far longer, since there

was additional time for cross examinations, and arguments, including considerable time on objections and arguments about exhibits.  Davenport's presentation of evidence and exhibits was disorganized, her exhibits were not provided on time to opposing counsel, and, though most had been requested during discovery and despite this court's order following Ginther's Motion to Compel (Docket No. 297), were not complete.  At trial, many of Davenport's exhibits contained documents "bundled" under one exhibit number.  The total trial time spent on this matter, was over ten and a half hours, over a three day period.

Davenport's claim is based on fees charged to Ginther by Davenport for services rendered over an approximately three year period ending in early 2007.

Ginther's objections centered around the lack of a written contract between attorney and client, the lack of any bills presented by the attorney to him in the course of three years of dealings between the parties, and the ineffectiveness of the services provided.  The lack of a written contract is particularly important, since Davenport was primarily an attorney who works on contingency fees, which Texas Disciplinary Rule 1.04(d) require must be in writing.  No written contract was produced and there was no evidence of any judgment obtained by Davenport which yielded a monetary recovery for Debtor.  Davenport asserts that she worked for Ginther on a "hybrid"

11

arrangement of hourly fees, expenses, and contingency.  This arrangement was not memorialized in writing.  The court finds that there was not a written contract for legal services between Debtor and Davenport.  Davenport testified that at the time covered by the dealings of the parties, she was charging Debtor an hourly rate of $250 which was reduced from her normal billing rate which was between $325 and $375 per hour.

Chris Di Ferrante, counsel for Debtor, testified as an expert as to the reasonableness and necessity of the fees Davenport claims she is owed by Ginther.  Di Ferrante reviewed the reconstructed time records attached to Davenport's proof of claim and segregated them into categories pursuant to cases or proceedings in which Davenport represented Ginther.  Some of the time entries relate to Civil Case No. H-85-6191 and Adversary No. 04-3944, matters on which Davenport was simultaneously counsel of record for both Ginther and Douglas Ferrell, Debtor's personal counsel and CPA, but billed the entirety to Ginther.  The time entries do not reflect whether the time spent on these matters was for services rendered solely on behalf of Ginther or on behalf of Ferrell, or both.

Di Ferrante testified that even if one assumed that a fee contract existed between the parties, the fees charged by Davenport were not reasonable for the time involved and the results obtained.  Di Ferrante reviewed each time entry,

12

categorized it according to each matter in which Davenport was counsel of record, and totaled the amounts which he believed were not compensable.  Di Ferrante prepared a Fee Summary and Color Key in connection with his analysis which also includes the reasons for his opinion.  (Debtor's Exhibit 43).

Debtor's Exhibit 43 reflects deductions for matters where time entries were duplicative; matters where adverse results were rendered by a court as a result of Davenport's failure to comply with a court order; matters in which work was not done or court appearances not made; and motions which were the responsibility of another retained attorney.  Di Ferrante testified that he additionally considered some of the fees excessive, and made reductions in Debtor's Exhibit 43, based upon his opinion of a reasonable time and charge for a specified service.  He made reductions on matters in which Davenport represented both Debtor and Ferrell, and for work which he believes should have been performed at the hourly rate of a paralegal instead of that of an attorney.

The court has reviewed the Summary in detail and found it to be carefully prepared and reliable.  The court finds that the reasons for, and the amount of, these reductions and deductions from the claim of Davenport are generally appropriate and reasonable.  The summary reflects a maximum amount of fees for services rendered by Davenport in the amount of $50,875.

Conclusions of Law

Under Section 502(b)(1), if an objection to claim is filed, the court shall determine the amount of the claim, and allow the claim, except to the extent that, inter alia, the claim is unenforceable against the debtor.

For a contract to exist, there must be an offer, acceptance, and consideration. See Harco Energy, Inc. v. Re-Entry People, Inc., 23 S.W.3d 389 (Tex.App.-Amarillo 2000, no pet.).  A meeting of the minds is necessary to form a binding contract. David J. Sacks, P.C. v. Haden, 2008 WL 4370686 (Tex. 2008), citing Hathaway v. General Mills, Inc., 711 S.W.2d 227, 228 (Tex. 1986).  A "meeting of the minds" is not an independent element of a valid contract.  It is merely a mutuality subpart of the offer and acceptance elements.  A "meeting of the minds" is a mutual understanding and assent to the expression of the parties' agreement.  See Weynand v. Weynand, 990 S.W.2d 843 (Tex.App.-Dallas 1999, pet. denied).

Under Rule 1.04(d) of the Texas Disciplinary Rules of Professional Conduct, a contingent fee contract shall be in writing, and shall state the method by which the fee is to be determined.  The agreement shall state the litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.  Tex. Govt. Code Ann. tit. 2, Subt. G app A, Art. 10,

14

§, Rule 1.04(d) (Vernon 2005). In the instant case, there is no written contract addressing a contingent fee contract between Debtor and Davenport. The court concludes that there is no enforceable contingent fee contract between Debtor and Davenport.

If evidence of the parties' mutual agreement consists of their conduct and course of dealing with one another, their mutual agreement may be inferred from the circumstances, in which case the contract is "implied" as opposed to "express." Double Diamond, Inc. v. Hilco Elec. Co-op., Inc., 127 S.W.3d 260 (Tex.App.-Waco 2003, no pet.). An implied contract involves an inference from circumstantial evidence and is a question of fact. Id.

The existence of an oral contract may be proved by circumstantial evidence as well as direct evidence. Harris v. Balderas, 27 S.W.3d 71 (Tex.App.-San Antonio 2000, pet. denied). An oral contract for legal services can be formed. Beverick v. Koch Power, Inc., 186 S.W.3d 145 (Tex. App.--Houston [1st Dist.] 2005), citing Hall v. Hall, 158 Tex. 95, 308 S.W.2d 12, 15 (1957).

In determining the existence of an oral contract, courts look at the communications between the parties and the acts and circumstances surrounding those communications. Palestine Water Well Services, Inc. v. Vance Sand and Rock, Inc., 188 S.W.3d 321 (Tex.App.-Tyler 2006, no pet.).

In the instant case, it is clear that Davenport appeared as counsel of record for Debtor in the Chapter 11 case of The Ginther Trusts, Case No. 98-32663, in Adversary Nos. 04-3944 and 06-3556 (adversary proceedings in The Ginther Trusts' Chapter 11 case), in Civil Action Nos. H-85-6191 and H-05-3285, in the United States District Court for the Southern District of Texas, and in Cause Nos. 231,749406 and 231,749407 in the Harris County, Texas Probate Court # 3.  The court concludes that an implied contract existed between Debtor and Davenport for legal services.

Where the parties have done everything else necessary to make a binding agreement for the sale of goods or services, their failure to specify the price does not leave the contract so incomplete that it cannot be enforced.  In such a case it will be presumed that a reasonable price was intended.  David J. Sacks, P.C. v. Haden, 2008 WL 4370686 (Tex. 2008).

Courts in the Fifth Circuit use the lodestar method to determine the reasonableness of attorneys' fees.  Shipes v. Trinity Industries, 987 F.2d 311, 319-20 (5th Cir.) *cert. denied*, 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993).  After determining the lodestar amount, the court may adjust the lodestar up or down in accordance with the relevant factors not already included in the lodestar.  Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

Nonexclusive factors that may be considered in determining the reasonableness of a fee include:  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.  Johnson, 488 F.2d, at 717-719.

These factors are similar to those under Texas law. Rule 1.04(b) of the Texas Disciplinary Rules of Professional Conduct.  Under that rule, nonexclusive factors that may be considered in determining the reasonableness of a fee include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily

17

charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.  Tex. Govt. Code Ann. tit. 2, Subt. G app A, Art. 10, §, Rule 1.04(d) (Vernon 2005).

In a bankruptcy context, in In re Busy Beaver Building Centers, 19 F.3d 833 (3rd Cir. 1994), the Third Circuit focused on the limited time available to bankruptcy courts in holding that the reviewing court "need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." Busy Beaver, 19 F.3d, at 845.[8]

In the instant case, this court concludes that fees should be disallowed or reduced where the services rendered were duplicative; where adverse results were rendered by a court as a

---

[8] The court notes that, under 11 U.S.C. § 330(a)(3)(F), a court considering a fee with respect to a bankruptcy case is directed to consider whether the compensation is reasonable based on the customary compensation charged by skilled practitioners in nonbankruptcy cases.  Thus, cases considering fees with respect to bankruptcy cases are instructive with regard to the fees in the instant case.

result of Davenport's failure to comply with a court order; where work was not done or court appearances were not made; and for motions which were the responsibility of another retained attorney.  In addition, the court has reviewed the time entries as to which Di Ferrante opined that the services should be reduced to a paralegal rate, and those as to which Di Ferrante opined that the time spent and amounts sought were excessive. This court found Di Ferrante to be a credible and competent expert witness, and finds his conclusions regarding these items to be sound, in light of this court's review of the time records, and of the docket sheets in the federal cases.  The court makes some allowance for the fact that it is sometimes of value to have a lawyer present, even where the results are unfavorable as a result of the lawyer's own failure to adequately or timely make necessary filings.  This court concludes that the allowable amount of fees is $56,000.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on October 1, 2008.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE